The State v. Bowles.

---

THE STATE OF KANSAS V. CHARLES M. BOWLES.

No. 14,053.   (79 Pac. 726.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Authority of Attorney-general.*   Whenever required by the governor to appear and prosecute criminal proceedings in any county the attorney-general becomes prosecuting attorney of that county in those proceedings, and as such may sign indictments presented by the grand jury.

2. ——— *Judicial Notice of Attorney-general's Authority.*   The district court of any county is obliged to take judicial notice of an executive order upon the attorney-general to appear and prosecute criminal proceedings there, and such authority need not be expressed on the face of an indictment which he signs.

3. ——— *Bribery.*   The solicitation of a bribe does not constitute an attempt to accept or to receive a bribe.

4. ——— *Solicitation Not a Crime.*   The solicitation of a bribe is not punishable as a crime under the laws of this state.

Appeal from Wyandotte district court; J. McCABE MOORE, judge.   Opinion filed February 11, 1905.   Affirmed.

*C. C. Coleman,* attorney-general, and *Jay F. Close,* assistant attorney-general, for The State.

. *Hale & Maher,* for appellee.

The opinion of the court was delivered by

BURCH, J. : Charles M. Bowles was indicted by a grand jury of Wyandotte county. The indictment charged that the defendant did unlawfully, feloniously, wickedly and corruptly offer and promise to a person named that he would give his vote, opinion, judgment, and action as a member of the board of education of the city of Kansas City in favor of a certain matter upon condition that he be paid a sum of money as a bribe and reward for so doing, and did unlawfully, feloniously and corruptly seek and solicit from the party named the payment of the sum of money stated as a reward and bribe unlawfully and corruptly to be given to influence him in the giving of his opinion, vote, judgment, and action.    The indictment concluded, and was signed, as follows :

"And the said grand jurors do present that, by the means and acts aforesaid, the said Charles M. Bowles did then and there unlawfully, feloniously and corruptly attempt to commit the crime of unlawfully, feloniously and corruptly accepting and receiving money from the said George E. Rose under an understanding and agreement which he, the said Charles M. · Bowles, then and there unlawfully, feloniously and corruptly attempted to make and enter into, that the vote, opinion and judgment of the said Charles M. Bowles should thereby be corruptly influenced to be cast and given in favor of the election of the said George E. Rose as principal and teacher in the said public schools—contrary to the statutes in such case made and provided, and against the peace and dignity of the state of Kansas.        C. C. COLEMAN,
*Attorney-general of the State of Kansas,
prosecuting in Wyandotte County."*

A motion was made to quash the indictment on the following grounds :

"1. The indictment is not signed by the county attorney, as required by law.

"2. That said indictment is not signed by the prosecuting attorney of said county, as required by law.

"3. That said indictment is not signed by any person as attorney who by law is authorized to sign indictments in said county.

"4. That the facts stated in such indictment are not sufficient to constitute any offense or crime under the laws of the state of Kansas."

The district court allowed the motion and quashed the indictment. The state appeals upon a question reserved.

The essence of the defendant's claim in reference to the form of the indictment is that it can be signed by no officer of the state except the county attorney of the county in which the grand jury sits. While the argument is reenforced from other sources its fundamental content is derived from the code of criminal procedure, and two decisions rendered in this state.

Section 5540 of the General Statutes of 1901 reads :

"Each indictment must be signed by the prosecuting attorney ; and when the grand jury return any indictment into court the judge must examine it, and if the foreman has neglected to indorse it, 'A true bill,' with his name signed thereto, or if the prosecuting attorney has neglected to sign his name, the court must cause the foreman to indorse or the prosecuting attorney to sign it, as the case may require, in the presence of the jury."

In the case of *The State v. Nulf*, 15 Kan. 404, the following language was used :

"Under the laws of Kansas, the 'prosecuting attorney' is always the 'county attorney.' (Gen. Stat. 283, 284, §§ 135, 136, 137.)   That is, every criminal

action prosecuted in the name of the state, must be prosecuted by the county attorney, who is the public prosecutor. Therefore, for the purpose of prosecuting criminal actions, the prosecuting attorney and the county attorney is one and the same person."

In the case of *The United States v. Lewis L. Weld*, McC. 185, 192, decided in 1860 by the United States district court for the fifth district of the territory of Kansas, it was said :

"When one person or class of persons is named in a power of attorney, or an act of the lawmaking power, as being authorized to do a certain thing therein named, all other persons are thereby excluded from doing the same thing as effectually as if they were positively forbidden."

The attorney-general justifies his conduct under section 7271 of the General Statutes of 1901, which provides :

"The attorney-general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court in which the state shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court, or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested."

In the year 1855 the legislature of the territory of Kansas provided for the election of a district attorney for each district organized for judicial purposes. He was required to appear in each county at the district court and prosecute and defend on behalf of the territory or county all suits, indictments, applications, or motions, civil or criminal, in which the territory or county should be a party, and, among other things, to draw and sign all indictments or other pleadings connected with his office. The same legislature adopted

The State v. Bowles.

a code of criminal procedure which made it the duty of the attorney prosecuting in the county to attend any grand jury whenever required and aid in various ways in the conduct of its proceedings, but no reference was made to the matter of signatures to indictments.

By an act approved February 12, 1858, the territorial legislature changed the system relating to local prosecutors, and created the office of county attorney for each county organized for judicial purposes. Its incumbent was required to appear in the several courts of the county and prosecute or defend actions, attend the sittings of the grand jury when required, and draw bills of indictment. The law provided that county attorneys should be elected at the general election following the session of the legislature, and of necessity district attorneys remained in office until the new system became operative.

By another act, approved February 12, 1858, the same legislature changed the code of criminal procedure and adopted a provision in reference to the manner in which indictments should be signed, in all respects identical with section 5540 of the General Statutes of 1901, already quoted. This act took effect immediately after its passage. It is plain, therefore, that the words "prosecuting attorney" in the new code were designed to embrace both the district attorney, who would have authority to prosecute until the next general election, and the county attorney, who would then be the local prosecutor.

During territorial days the attorney-general was an official deriving his power and authority from the government of the United States. There was, therefore, no multiplicity of officers, some one of whom needed to be designated to perform the special duty

of signing indictments to the exclusion of all others. All that was necessary was to provide for the due authentication of true bills returned by the grand jury. The object of the statute was not to confer a special power upon an individual, according to the principle announced in the case of *The United States v. Weld, supra,* but to protect the legitimacy of a document. To the attorney in charge of the territory's case at the time was assigned this duty. He might be district attorney, with jurisdiction extending over all the counties of a judicial district, or he might be county attorney, with a much more limited range of authority, but the prosecuting attorney, whatever his official title and whatever the scope of his territory, was to sign indictments.

Upon its admission into the union the new state abolished the office of county attorney and returned to the former system of district attorneys. In 1864 the office of county attorney was restored, but the statute of 1858 relating to the authentication of indictments has persisted, unmodified, to the present time.

In the organization of the state government the office of attorney-general was created, and by an act approved June 12, 1861, it was provided that the attorney-general, whenever required by the governor or either branch of the legislature, should appear for the state and prosecute or defend, in any court, or before any officer, in any cause or matter, civil or criminal, in which the state might be a party or interested. The substance of this act has been preserved in all subsequent revisions of the law, and it now appears as section 7271 of the General Statutes of 1901.

The experience of members of the legislature during territorial times had taught them the necessity

of a state government equipped with sufficient power to protect public rights and redress public injuries throughout the entire state, independent of the attitude of local authorities, who might be indifferent, incapable, or even antagonistic. They had suffered from the baleful manifestations of sectionalism within the state, as well as between different states, and the purpose was to make the authority of the government felt, through its chief law officer, in every part of its territory, if the chief executive or either branch of the legislature should determine it to be necessary. The language of the statute indicates that the intention was to grant plenary power to the attorney-general to this end, and he was invested with full authority to use all the means afforded by the law to meet the requirements of any situation and fully protect the interests of the state. When directed by the governor or either branch of the legislature to appear and prosecute criminal proceedings in any county he becomes the prosecuting attorney of that county in those proceedings, and has all the rights that any prosecuting officer there may have, including those of appearing before the grand jury, signing indictments, and pursuing cases to final determination.

In the American and English Encyclopedia of Law (2d ed.), volume 23, page 268, there is a fair statement of what is included in the term "prosecute."

"To prosecute is to proceed against judicially. A prosecution is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information."

The reasoning of decided cases involving differing states of fact leads to the same conclusion. (*Choen v. The State*, 85 Ind. 209 ; *Territory v. Harding*, 6 Mont. 323, 12 Pac. 750 ; *State v. District Court*, 22 id. 25, 55 Pac. 916, 918.)

The remark of Mr. Justice Valentine in *State v. Nulf*, quoted above, was made without attention's having been called to this power of the attorney-general. The court was not then considering, and did not pretend to decide, the question now under discussion. Certainly it was not the intention of the court to nullify, by that decision, the statute which gives the attorney-general the right to prosecute whenever required by the governor or either branch of the legislature to do so.

Time has abated nothing from the strength of purpose indicated by the words of the statute under consideration ; indeed, the power of the attorney-general in our political system has subsequently been enlarged, and he may now, upon his own motion, undertake the enforcement of the prohibitory liquor law in any county of the state, if the county attorney be unable or neglects to do so, and to that end he may perform any act which the county attorney may perform. What, if any, common-law powers he may possess, it is not necessary, in view of the statute, to determine.

The indictment was signed by an attorney who was by law authorized to sign indictments in Wyandotte county, and it should not have been quashed upon any one of the first three grounds stated in the motion to quash.

In the brief for the defendant it is urged that the indictment was insufficient because the authority of the attorney-general to sign it was not stated. The motion to quash does not raise this question, but the

attorney-general argues it as if it were a matter in dispute before the district court. Therefore, it is proper to say that the signature was sufficient.

The district court was obliged to take judicial notice of the official character and identity of the attorney-general and of the executive requirement upon him to appear and prosecute. The action of the governor was a matter of court cognizance and not a matter for the indictment to express. The attorney-general was no more required to indicate that he was acting under an executive order than the county attorney is required to refer to the fact of his election, the taking of his oath, and the filing of his bond. Having authority to sign the indictment the attorney-general did all the statute requires when he signed it. (*The State v. Nulf*, 15 Kan. 404; *The State v. Tannahill*, 4 id. 117; *The State v. Kinney*, 81 Mo. 101; *Choen v. The State*, *supra;* 10 Encyc. Pl. & Pr. 448.)

The act charged against the defendant in the body of the indictment is the solicitation of a bribe. The legislature has not seen fit to make the solicitation of a bribe punishable in express terms, and the question is whether the same end may be reached through the statute relating to attempts. In the light of the history of the legislation of this state concerning bribery the omission from the statute may well be regarded as conclusive.

The subject is an old one. When the aged Samuel was testifying his integrity he said :

"Whose ox have I taken? or whose ass have I taken? or whom have I defrauded? whom have I oppressed? or of whose hand have I received any bribe to blind mine eyes therewith? and I will restore it you."

Isaiah accorded the privileges of the godly to him

"that shaketh his hands from holding of bribes" and David sang of a separation of life and soul from those whose "right hand is full of bribes." The governments of all the civilized peoples which have arisen since those ancient days have struggled with the problem.

Prior to the year 1869 receiving a bribe was a crime in this state. By chapter 43 of the Laws of that year the legislature repealed all sections of the bribery statute then in force so far as they related to bribe-takers. For a period of twenty-six years following this repeal officers who received rewards for official conduct were not amenable to criminal punishment at all for their corrupt acts. In 1895 the matter again became the subject of legislative cognizance, and the present law was enacted, providing as follows:

"Any officer of the state or of any county, city, district, or township, after his election or appointment, and either before or after he shall have qualified, or entered upon his official duties, who shall accept or receive any money or the loan of any money, or any real or personal property, or any pecuniary or other personal advantage, present or prospective, under any agreement or understanding that his vote, opinion, judgment or action shall be thereby influenced, or as a reward for having given or withheld any vote, opinion, or judgment, in any matter before him in his official capacity, or having wrongfully done or omitted to do any official act, shall be punished by a fine of not less that two hundred dollars nor more than one thousand dollars, or by imprisonment for not less than one year nor more than seven years in the penitentiary at hard labor, or by both such fine and imprisonment, at the discretion of the court." (Gen. Stat. 1901, § 2212.)

The statutes of many states by express provision punish the solicitation of bribes. The statute of this

state in force in 1895 relating to the giving of bribes, devoted a separate section to offering or attempting to bribe. The appearance in the new law of an analogous section relating to soliciting or attempting to secure a bribe might well have been anticipated, but nothing of the kind was inserted. Presumably the legislature expressed itself fully and did not intend to punish a solicitor unless he actually received the bribe.

The spectacle of a public officer soliciting his own purchase is so disgusting that the subject scarcely could have escaped the legislative attention ; but many practical considerations are involved in the detection and punishment of bribery. Ordinarily, disclosure must come from one or the other of the participants in the despicable business. Solicitation, however, is extremely rare compared with offers to corrupt, and the same policy which so long exempted the bribe-taker altogether may have been deemed wisest in regard to solicitation. In any event, this court should not be called upon to outstrip the legislature and by construction invent a crime which, with many precedents before them, the lawmakers might have delineated in a few words while engaged in the work of remodeling the bribery law.

Aside from these considerations the court is of the opinion that the solicitation of a bribe is not an attempt to accept or to receive a bribe, within the meaning of the statute relating to attempts. That statute reads :

"Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof shall, in cases where no provision is made by law for the punishment of such attempt,

be punished as follows : ''    (Gen. Stat. 1901, § 2284.)

In determining whether certain conduct was punishable criminally at common law English judges have frequently made the statement that soliciting is an act done which in itself is sufficient, when coupled with wrongful intent, to constitute a crime.   In discussing the subject, the word ''solicit'' has been used in the same connection with words like ''incite,'' ''endeavor,'' and ''attempt,'' but the purpose in view has been to show that solicitation in itself embodied the elements of an independent crime, and not to discriminate it as an ineffectual attempt to commit another crime, in the sense of our statute.   This is plain from a critical reading of the leading case of *The King v. Higgins*, 2 East, 5.   The head-note accurately expresses the conclusion of the judges as follows :

''To solicit a servant to steal his master's goods is a misdemeanor, though it be not charged in the indictment that the servant stole the goods, nor that any other act was done except *the soliciting* and inciting.   And such offense is indictable at the sessions, having a tendency to a breach of the peace.''

Lord Kenyon, chief justice, and Le Blanc, J , were able to express themselves without confusing attempt and solicitation.   Justices Grose and Lawrence were more discursive, and by their language opened the way to much of the uncertainty relating to the law of attempt in this country.   In his work on Criminal Law Mr. Bishop has evidently seized upon the words most favorable to his purpose in this and other similar cases in an effort, supported, however, by some authority, to establish the doctrine that solicitation is an attempt.

The case of *Heselton v. Lister*, Cooke C. P. 88, is cited.   The entire report of that case is here given, be-

cause it is apparently·referred to as deciding that so-
licitation is an attempt in a bribery case :

"A motion to justify bail upon examination of the
bail in court ; the plaintiff's attorney showed to the
court that the same persons were bail in another
cause, and represented that he verily believed they
were very insufficient, for the defendant himself had
told him they were not worth a groat ; he likewise in-
formed the court that one Dewell, a sheriff's officer,
had just then been with him, and told him if he would
go out of court the defendant would give him half a
guinea ; Dewell was likewise examined upon oath, and
declared the same ; upon this the court all agreed that
this was an attempt in the defendant to pervert jus-
tice, and a notorious contempt of the court, and com-
mitted him to the fleet till further order."

A number of American cases used as authority for
the proposition of the same text throw no more light
on the subject than *The King v. Higgins, supra.*

The reporter of the case of *The United States v. Wor-
rall,* 2 Dall. 384, Fed. Cas. No. 16,766, 1 L. Ed. 426,
says the defendant in that proceeding was charged
with an attempt to bribe.   The indictment used no
such language, and the only legal question argued
and determined was if the courts of the United States
had jurisdiction of common-law offenses, and that
question was decided wrong.

In the case of *The State v. Avery,* 7 Conn. 267, 18
Am. Dec. 105, the sole question was if the solicitation
of another to commit adultery was a high crime and
misdemeanor cognizable by the superior court, and
not if an attempt could be made out from mere solici-
tation.

In the case of *Commonwealth v. Harrington,* 3 Pick.
26, the head-note is accurate and reads :

"Exciting, encouraging and aiding a person to com-
mit a misdemeanor is of itself a misdemeanor."

53—70 KAN.

The State v. Bowles.

The same is true in the case of *Commonwealth v. Flagg*, 135 Mass. 545, where it was said :

"It is an indictable offense at common law for one to counsel and solicit another to commit a felony, although the solicitation is of no effect, and the crime counseled is not in fact committed."

The citation of the case of *Pennsylvania v. Margaret M'Gill and William Boggs*, Add. Pa. 21, to prove that solicitation is equivalent to attempt is astonishing. The report is of an occurrence in the county court of Allegheny county, and reads thus :

"Indictment for a misdemeanor. Boggs persuaded M'Gill to steal, and deliver to him, a conveyance for 100 acres of land executed by Henry Shaver to his son and daughter. This land was part of a larger tract, of which Shaver had been possessed, under a location or a Virginia certificate. He intended this hundred acres as a provision for his two children ; and having sold the rest to Boggs, he conveyed the location or certificate to him, that he might take a patent for the whole in his name, and took an article or bond on Boggs, to convey this hundred acres to his children, after he obtained the patent for the whole. They were convicted.

"The court suggested that it might be useful, if Boggs, having the title to this land, should, before sentence, execute a conveyance to the son and daughter of Shaver. He did so — and judgment was given."

The case of *The People v. Bush*, 4 Hill, 133, is the strongest authority cited in support of the text referred to. Concerning that case, however, it might be argued that the conduct proceeded beyond solicitation. The prisoner, besides soliciting to arson, furnished materials to accomplish the burning, and was held guilty of an attempt, under a statute similar to that of this state.

The doctrine of *People v. Bush* was repudiated by

the supreme court of West Virginia in an able and
exhaustive opinion in the case of *State v. Baller*, 26
W. Va. 90, 53 Am. Rep. 66; and, contrary to *People
v. Avery*, the supreme court of Washington, in a re-
cent carefully reasoned case, holds that mere solicita-
tion to commit adultery is not an attempt to commit
the crime. (*State v. Butler*, 8 Wash. 194, 35 Pac.
1093, 25 L. R. A. 434, 40 Am. St. Rep. 900.) Ap-
pended to the reprint of this decision, in 25 L. R. A.
434, is an editorial note relating to the criminality of
solicitation to crime which is not consummated, in
which many cases are analyzed and classified. Upon
the branch of the subject now under consideration
the following conclusion is reached :

"The authorities are not so uniform upon the ques-
tion how far solicitation is an attempt. But the
weight of authority is in accord with *State v. Butler*,
that it is not an attempt. The very definition of
'attempt' precludes the possibility of its including
a mere solicitation."

Likewise, in Cyclopedia of Law and Procedure, vol-
ume 12, page 183, where numerous authorities are
collated, it is said :

"Some of the courts have treated solicitation to
commit a crime as an attempt. By the weight of au-
thority, however, it is not a sufficient overt act to be
indictable as an attempt, but must be indicted as a
distinct offense."

In the state of Illinois a statute was enacted read-
ing as follows :

"Whoever attempts to commit any offense prohib-
ited by law, and does any act toward it but fails, or is
intercepted or prevented in its execution, where no
express provision is made by law for the punishment
of such attempt, shall be punished," etc. (Rev. Stat.
1874, ch. 38, § 273.)

In construing this statute the supreme court of that state said :

"The words 'whoever attempts to commit any offense prohibited by law, and does any act towards it,' must be construed, in cases like the present, to mean a physical act, as contradistinguished from a verbal declaration ; that is, it must be a step taken toward the actual commission of the offense, and not a mere effort, by persuasion, to produce the condition of mind essential to the commission of the offense." (*Cox v. The People*, 82 Ill. 191, 193.)

In the case of *The State v. Harney*, 101 Mo. 470, 14 S. W. 657, the opinion reads :

"For a man to have sexual intercourse with a female child under the age of twelve years is for that man to be guilty of rape. R. S. 1879, sec. 1253. And the law declares that 'every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do *any act* towards the commission of such offense but shall fail in the perpetration thereof, shall be punished,' etc. R. S. 1879, sec. 1645. The only charge that can be evolved from the verbose reiterations of this indictment is that the defendant, by verbal solicitations, tried to obtain the consent of a child under the age of twelve years to have sexual intercourse with him and failed. However despicable and deserving of punishment such conduct may be, it falls short of the criminal offense attempted to be charged, to constitute which there must be an actual attempt to have intercourse with such child. So long as the evil purpose dwells in contemplation only, it is beyond the grasp of these provisions of the law."

In the case of *Hicks v. Commonwealth*, 86 Va. 223, 226, 9 S. E. 1024, 19 Am. St. Rep. 891, it was said :

"The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need

The State v. Bowles.

not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or more subsequent step in a direct movement towards the commission of the offense after the preparations are made.''

This court has virtually adopted the restricted meaning of the word ''attempt'' indicated by these decisions.

In the case of *In re Lloyd, Petitioner*, 51 Kan. 501, 33 Pac. 307, the position was taken that an attempt must involve an overt act beyond solicitation; and in the case of *In re Schurman, Petitioner*, 40 Kan. 533, 542, 20 Pac. 277, 282, it was said :

''If what was charged would naturally have resulted in inducing the company to part with its money, such attempt would probably be an offense; 'but when between the attempt and the execution is interposed the volition of an independent moral agent, then, by stress of the definition just given, an indictable attempt is not made out.' (1 Whart. Crim. Law, §§ 177, 178.)''

In a very recent case the supreme court of Michigan admitted the principle announced by Doctor Wharton to be applicable to the crime of bribery, and held the solicitation of a bribe to be punishable, not as an attempt, but as an independent common-law crime.

''It is strenuously contended that the indictment charges no offense known to the laws of this state.   It is conceded by the learned counsel for the state that there is no statute defining the offense set out in the indictment, but it is contended that the case falls within the statute (3 Comp. Laws, § 11795) providing for the punishment of offenses indictable at the common law.   In other words, it is claimed that the indictment sets out an offense at the common law.   Respond-

·ent's counsel assert that solicitation to commit a crime is not indictable when there is interposed between the solicitation on the one hand and the proposed illegal act on the other the resisting will of another person, which other person refuses assent and cooperation ; citing, among other cases, *McDade v. People*, 29 Mich. 50, and *Smith v. Com.*, 54 Pa. St. 209 (93 Am. Dec. 686). It may be accurate to say that what is treated in the law as an *attempt* to commit a crime is not complete where there is interposed between the solicitor and the consummation of the completed offense the resisting will of the one whom the solicitor seeks to employ as the active agent. But to say that a solicitation may not amount to an offense under these circumstances is to deny that a solicitation to commit a felony is punishable at the common law as a substantive and completed offense.'' (*People v. Hammond*, 132 Mich. 422, 93 N. W. 1084.)

The inference from this decision is that soliciting a bribe would not be punishable in Michigan except for the statute recognizing common-law offenses. That it is not punishable in Texas appears from the case of *Hutchinson v. The State*, 36 Tex. 293, in which it was said :

"The indictment was drawn under article 1870, Paschal's Digest, and the pleader attempted to charge the defendant with accepting a bribe ; but the indictment wholly fails to make any such charge specifically, and only charges him with offering to receive a bribe. This is not an offense punishable as a crime under the law.''

There are no common-law offenses in this state, and there can be no convictions in this state except for such crimes as are defined by statute. (*The State v. Young*, 55 Kan. 349, 40 Pac. 659.)

In harmony with what is undoubtedly the modern trend of the law this court is constrained to hold that so long as the will of the person solicited is opposed

to the corrupt conduct there can be no attempt, in the legal sense, to accept or to receive a bribe.  After a willingness of mind on the part of both participants has been established, the matter of giving and receiving the bribe money or other pecuniary or personal advantage must still be accomplished.  That transaction may be very simple or very complex, and the room for attempt may be very wide or very narrow, but until it is finally undertaken and some act done, the stage of attempt has not been entered upon.

The remarks of the supreme court of Maryland in an opinion denying that solicitation constitutes an attempt are pertinent to this case :

"Certainly it would be a great public calamity to invent crimes by subtle, ingenious and astute deduction.  In all free countries the criminal law ought to be plain, perspicuous, and easily apprehended by the common intelligence of the community.  It is the essence of cruelty and injustice to punish men for acts which can be construed to be crimes only by the application of artificial principles according to a mode of disquisition unknown in the ordinary business and pursuits of life.  The legislature, with ample power over the whole subject, determined what offenses should be punished.  If it had desired that other actions of a cognate character should become penal, it would have so enacted.  It is the duty of the courts to interpret and administer the legislative will ; but in cases of criminal cognizance they must resolutely determine never to exceed it.  .  .  .  The law would not be a practical system if it did not define with precision the nature and circumstances of the attempts which are criminal, and determine what acts are necessary to make the attempt a substantive offense. In our judgment it has done so, and not left us to grope after results under the guidance of vague general expressions."  (*Lamb v. State*, 67 Md. 524, 534, 10 Atl. 208, 298.)

The indictment was properly quashed upon the last ground stated in the motion, and the judgment of the district court is affirmed.

All the Justices concurring.