**UNITED STATES of America, Plaintiff,**

v.

**David ROBLES, Defendant.**
**Crim. No. 12662.**

United States District Court
N. D. California, N. D.
July 14, 1960.

---

1. The briefs of counsel have been filed with the Clerk (see Documents Nos. 7, 15 and 16).

Laurence E. Dayton, U. S. Atty., San Francisco, Cal., and Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

John L. Brannely, Sacramento, Cal., for defendant.

HALBERT, District Judge.

██ Defendant is charged by indictment with a violation of Title 18 U.S.C. § 1403, the use of a communications facility (in this case, the mails) in facilitating the commission of, or in attempting to commit, a violation of Title 21, U.S.C.A. § 174. Trial by jury has been waived in open court by all concerned. The Government and the defendant have each stipulated to certain facts, and have agreed that the case may be submitted for the determination of defendant's guilt on these facts.[1] Defendant takes the position that these facts do not constitute a violation of the law.

## The Stipulated Facts

Defendant mailed a letter from Hamilton City, California, within the jurisdiction of this Court, to Sr. Josue Ibarra, in Guadalajara, Republic of Mexico. Said letter was mailed February 15, 1960. A copy of the face of the envelope is identified as Exhibit 1; a copy of the letter is identified as Exhibit 2; and a translation of the letter is identified as Exhibit 3.[2] Each of these exhibits is authentic, and the letter is in the hand of the defendant.

Narcotics Agent Robert Nickoloff would, if called as a witness, testify that defendant admitted writing the letter, and Sr. Oscar Sanchez, an agent of the Federal Judicial Police of Mexico, would, if called as a witness, testify that Josue Ibarra was arrested in Guadalajara, Mexico, on February 28, 1960, at a laboratory

---

1. Where both the Government and the defendant enter into a stipulation concerning the facts of a case, the Court is conclusively bound by the facts stated in the stipulation (United States v. Kahriger, 3 Cir., 210 F.2d 565). The stipulation is evidence, and the Court must regard the facts covered by the stipulation as conclusively proven (United States v. Schneiderman, D.C., 106 F.Supp. 906, affirmed sub nom. Yates v. United States, 225 F.2d 146, reversed on other grounds, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356).

2. A translation of Robles' letter is as follows:
"February 15, 1960
"Hamilton City, California
"Sr. Josue Ibarra
"Esteemed friend, the present permits me to greet you, along with all of your family. At the moment I am well, thanks to God. Josue, perhaps you might feel it strange to receive a letter from me. You know that I was in Guadalajara and it was impossible for me to see you, for the reason that I lost your address. But, Chayito, my sister, got it from your sisters-in-law. Well, passing to another subject, I wish to tell you that I have something favorable on hand and I would appreciate it if you would do me the favor of telling me whether you have a load. I want something different from the gum if it happens that you have it. Tell me what it is and what you sell it for by the gram. Look Josue, do not distrust me. You remember me, I am David, brother of Nati, and I have something very good. As soon as you answer me I will be there. If you do not have what I am looking for, and you know where I can get it, I would appreciate it very much if you would direct me. Well, awaiting your reply, I am your friend, who esteems you.

"David Robles"

which made, and was making, heroin. Ibarra then had possession of the letter, above-referred-to as constituting Exhibits 1, 2, and 3, in this case. Agent Sanchez, if called as a witness, would translate the word *"carga"* from Spanish to English as "load," and from English to the jargon of narcotics traffickers as a "quantity of narcotics." Following the same procedure, "goma" would be translated to "gum" and ultimately to "opium." Agent Sanchez, if called as a witness, would translate "gramo" to mean "gram," and at the same time would state that this is a common measure of narcotics.

Defendant would offer no evidence to rebut any of these facts.

### The Issue to be Resolved

The Court is called upon to determine whether the stipulated facts establish to a moral certainty, and beyond a reasonable doubt, that the defendant, by his letter, was facilitating, or attempting the commission of, a violation of Title 21 U.S.C.A. § 174.

The uncontroverted evidence shows that the defendant wrote to a manufacturer of heroin. While the letter is not entirely clear (due in all probability to the translation from Spanish to English), it is apparent to the Court that defendant intended to, and did, tell the addressee that he (the defendant) had "something favorable on hand," and wanted to buy a "load," not "gum," if possible. He asked what it was, and how much the addressee would "sell it for by the gram." Defendant urged the addressee not to distrust him, for he was David, brother of Nati. "As soon as you answer I will be there," wrote the defendant. From this letter and all of the circumstances surrounding it, it is patently obvious, and clear beyond any reasonable doubt, that defendant was attempting to purchase a quantity of narcotics from the addressee, Ibarra. It is also manifest that defendant wanted heroin if it was available, but would take "gum" (that is, opium) if Ibarra had nothing else.

■■ The crucial question, as counsel for defendant aptly points out, is whether defendant intended to import the "load" into the United States after he purchased it. The answer has to be garnered from the facts which the Court has before it, supplemented by the reasonable and rational inferences and presumptions which properly relate to it. Defendant wrote the letter from the United States, and said that he had "something favorable *on hand,"* *"something very good."* The only rational conclusion that can be drawn from this statement is that defendant had an outlet for the drug in the United States, at, or in the vicinity of, the place where he wrote the letter, and that he intended to buy a "load" and bring it back to the United States. It is a matter of common knowledge, of which this Court can take judicial notice, that the prevalent direction of the flow of the narcotics traffic is into the United States. In particular, it is a well-known fact that narcotics move in large quantities from the Republic of Mexico to the United States (see: House Rep't No. 2388, June 19, 1956, 84th Cong., 2d Sess.). From the stipulated facts, supplemented by these facts of which the Court can take judicial notice, this Court can reach no conclusion other than that defendant intended to import the "load" (narcotics) into this country. Of this the Court has no doubt, reasonable or otherwise.

The Court is also convinced, to a moral certainty, and beyond a reasonable doubt, that defendant intended to import the "load" (narcotics) into this country contrary to law. His mere possession of the drug, unless explained, would support such a conclusion (Title 21, U.S.C.A. § 174). Defendant has made no contrary explanation of his intent. Furthermore, there is nothing "very good" and "favorable" in the legitimate importation of narcotics into the United States (this guarded wording of the letter certainly indicates guilt on the part of defendant), and this fact, coupled with defendant's feeling that he must overcome Ibarra's possible distrust by giving a reference to his sister, points to but one conclu-

sion, and that is that defendant intended to violate the law.

The next question to be answered is whether the sending of the letter in question constituted an "attempt" to violate Title 21 U.S.C.A. § 174, within the legal meaning of the word "attempt," as used in Title 18 U.S.C. § 1403. Defendant did not go so far as to purchase the drug in Mexico. The purchase would not, in and of itself, have constituted a violation of Title 21 U.S.C.A. § 174. The record shows quite clearly (at least to the complete satisfaction of the Court), however, that defendant was trying to buy a "load" in Mexico, and bring it into the United States. He took the first step in the furtherance of this plan by writing and mailing the letter (Exhibit 2) to find a source of supply. When defendant wrote the letter, and mailed it, he began a course of conduct designed to culminate in the unlawful importation of a narcotic drug into the United States.

The language of Title 18 U.S.C. § 1403 is such as to compel a conclusion that an attempt may be made by the mere use of communication facilities. To attempt to do an act does not imply a completion of the act, or in fact any definite progress towards it. Any effort or endeavor to effect the act will satisfy the terms of the law. United States v. Quincy, 6 Pet. 445, 31 U.S. 445, 8 L.Ed. 458; and see: United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553; and Simpson v. United States, 9 Cir., 195 F.2d 721.

It might also be readily argued that defendant used the communication facilities in question to facilitate the commission of an offense against Title 21 U.S.C.A. § 174 (see: Bruno v. United States, 259 F.2d 8), but having reached the conclusion set forth above in detail, and being convinced that defendant did in fact use a communication facility in attempting to commit an act proscribed by the statutes referred to in § 1403 of Title 18, U.S.C., there is no reason to prolong this memorandum with a discussion of this facet of this case.

For the reasons set forth in this memorandum, the Court finds that the defendant, David Robles, is guilty of the offense of violation of Title 18 U.S.C. § 1403, as charged in the indictment on file in this action.

The defendant, David Robles, together with his counsel, will appear before this Court on Monday, July 18, 1960, at the hour of 9:30 a. m., for such further proceedings as may be appropriate in this action.