Therefore, it is the judgment of this Court that plaintiff's motion for summary judgment is granted and the arbitration board's award is vacated.

UNITED STATES of America, Plaintiff,

v.

AMERICAN AIRLINES, INC. and
Robert L. Crandall, Defendants.

No. CA–3–83–0325D.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 12, 1983.

Kevin Sullivan, Anne Blair, Michael Simon, Tirza Wahrman, Elliott M. Seiden, James R. Weiss, Attys., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

John J. Hanson, Robert E. Cooper, Gibson, Dunn & Crutcher, Los Angeles, Cal., John L. Hauer, P.C., Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Cecil E. Munn, Robert S. Travis, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., Joseph A. Tate, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court the motion of defendants Robert Crandall (Crandall) and American Airlines, Inc. (American) to dismiss the action for failing to state a claim upon which relief can be granted. Having considered the pleadings and briefs, and the relevant case law, this Court is of the opinion that the motion should be granted.

### I. Preparation for Takeoff—The Flight Plan

The Government filed this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, to enjoin and restrain American and Crandall from further violations of Section 2 of the Sherman Act, 15 U.S.C. § 2. The complaint alleges Crandall, acting as Chief Executive Officer of American, unlawfully attempted to monopolize airline passenger service to a number of cities served from the Dallas/Fort Worth Regional Airport by requesting that Howard Putnam (Putnam), Chief Executive Officer of Braniff Airways, Inc. (Braniff), raise Braniff's prices, while assuring Putnam that American would follow suit. The Government seeks as relief to enjoin American from employing Crandall for a period of twenty-four months and to enjoin American from communicating any price information with a competitor for a period of ten years.

The Government's case is based on a telephone conversation between Crandall and Putnam that took place February 1, 1982.

In that conversation, which Putnam taped, the following exchange took place:

> Crandall: I have a suggestion for you. Raise your * * * * fares twenty percent. I'll raise mine the next morning.
> Putnam: We can't talk about pricing.
> Crandall: Oh bull * * * *, Howard. We can talk about any * * * * thing we want to talk about.

The Government contends this conversation, by itself, constituted an attempt to monopolize in violation of Section 2 of the Sherman Act. As this Court shall illustrate, the Government's position is untenable and this action must be dismissed.

The Government characterizes the alleged antitrust violation as an attempt to establish joint control over price and thereby constituting an attempt to jointly monopolize in violation of Section 2 of the Sherman Act.[1] As a general matter price fixing and price related cases are generally brought under Section 1 of the Act.[2] *See United States v. Container Corp. of America,* 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries Co.,* 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927). A Section 1 violation, however, requires a plurality of actors, *see Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke Liquors, Ltd.,* 416 F.2d 71 (9th Cir.1969), *cert. denied,* 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970), and some proof of a contract, combination or conspiracy. *See Theatre Enterprises, Inc. v. Paramount Film Dist. Co.,* 346 U.S. 537, 74 S.Ct.

---

1. Section 2 of the Sherman Act, 15 U.S.C. § 2, reads as follows:

 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

2. Section 1 of the Sherman Act, 15 U.S.C. § 1, reads as follows:

 Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination of conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment nor exceeding three years, or by both said punishments, in the discretion of the court.

257, 98 L.Ed. 273 (1954). Further, Section 1 proscribes only actual combinations, contracts and conspiracies; it does not reach attempts. Unable to satisfy these requisites because of Putnam's unequivocal refusal to agree to the suggestion made by Crandall, the Government brought this price related action under Section 2.

## II. Pre-flight Checklist—Will it fly?

■ Defendants responded to the complaint by filing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), which asserts that the Government's pleading failed to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion this Court is to consider primarily the allegations in the complaint. C. Wright & A. Miller, *Federal Practice and Procedure,* ¶ 1357 (1969). The motion should only be granted when it can be seen from the face of the complaint that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413, 415 (5th Cir.1980).

This Court is aware of the fact that the Government's theory in this case is, indeed, innovative. With respect to an unconventional cause of action in a tort context, the Fifth Circuit has cautioned, "[i]t is perhaps ironic that the more extreme or even farfetched is the asserted theory of liability, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition." *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir.1963). Nevertheless this Court sees no purpose in denying the motion to dismiss for further factual development because the facts are clear and this Court is convinced that the complaint asserts no claim actionable under the antitrust laws.

## III. Aerodynamic Deficiencies

Defendants assert three grounds for dismissal of this action: (1) the complaint fails to allege the existence of an agreement, an indispensable element of a claim for attempted joint monopolization; (2) the complaint alleges nothing more than a rebuked solicitation, an offense that does not fall under the "attempt" language of Section 2; and (3) the complaint fails to allege any facts to support the contention that there was a dangerous probability of successful joint monopolization.

The Government responds that it is not necessary to allege an agreement in maintaining a claim for attempted joint monopolization. Further, it asserts that Crandall's conduct amounted to both an attempt and a solicitation. Finally, the Government contends that the dangerous probability of success of the attempted monopolization is a question of fact and this action is thus inappropriate for dismissal on the pleadings.

This Court agrees with the defendants on issues one and two. Consequently, this cause must be dismissed for failure to state a claim upon which relief can be granted. In so concluding, it thus becomes unnecessary for the Court to reach issue three.

### A. Too Little Horsepower

The question posed here is a narrow one: can an attempted joint monopolization claim be maintained without an allegation of an agreement or conspiracy between the potential monopolists? In contending that such an action may be maintained, the Government's argument is quite simple: the Supreme Court recognized the offense of joint monopolization under Section 2 in *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1948); the case law developed with respect to an "attempt to monopolize" has no requirement of any agreement; therefore, an attempt to jointly monopolize can be established without an allegation of an agreement. The Government has not, however, cited a single case supporting this theory. Only two cases, *American Tobacco, supra,* and *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 513 F.Supp. 1100 (E.D.Pa.1981), shed light on this issue at all. Each tends to disprove the Government's theory in this case.

In *American Tobacco* the Government charged the existence of a criminal conspir-

acy against the nation's three largest ciga- rette producers for jointly manipulating the price of tobacco and the price of cigarettes for the purpose of excluding competition. At trial convictions were obtained on four counts: conspiracy in restraint of trade, monopolization, attempt to monopolize,[3] and conspiracy to monopolize. The Supreme Court upheld the convictions in a limited review, thereby impliedly approving the joint monopolization theory. The Supreme Court quoted the trial court's jury instruc- tion with respect to the legal elements of attempted monopolization by combination. The instructions were stated as follows:

The phrase "attempt to monopolize" means the employment of methods, means and practices which would, if suc- cessful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it, which methods, means and practices are so employed by the members of and pursuant to a combina- tion or conspiracy formed for the purpose of such accomplishment.

\* \* \* \* \* \*

Thus you will see that an indispensable ingredient of each of the offenses charged in the Information [i.e., attempt- ed joint monopolization, conspiracy to mo- nopolize, and joint monopolization] is a combination or conspiracy.

328 U.S. 785–86, 66 S.Ct. at 1127.

The Government argues that the above jury instruction is not relevant because "[t]he government, in alleging—and ulti- mately proving—the existence of an agree- ment in the American Tobacco case, did not present the district court with the legality of an attempt to establish such a monopoliz- ing agreement." (Government's Brief p. 25). The logical continuation of this argu- ment is that in *American Tobacco* the con- victions for attempt to monopolize did not depend on the alleging and finding of an actual conspiracy. The jury charge dis- proves this contention. The trial court in

*American Tobacco* unequivocally instructed the jury that the attempted joint monopoli- zation conviction hinged on the finding of a conspiracy. Without the conspiracy the at- tempted joint monopolization claim could not be maintained.

This interpretation of *American Tobacco* is supported by the opinion of Judge Becker in *Zenith, supra.* In that case the plaintiffs charged the defendants with attempted mo- nopolization by combination, as well as con- spiracy to monopolize, monopolization and illegal restraint of trade in the electronics industry. The court granted defendant's motion for summary judgment on all counts because of the lack of evidence of a conspir- acy. In discussing the attempted monopoli- zation claim the court noted that the claim was foreclosed without some proof of con- spiracy;

Under *American Tobacco,* an attempt to monopolize by combination requires the same type of concerted action and unity of purpose as required in a claim of actu- al monopolization. As we have held, the plaintiffs have not offered proof of such concerted action to withstand the defend- ants' motion for summary judgment.

513 F.Supp. at 1321.

The Government asserts that the *Zenith* opinion should be discounted for two rea- sons. First, the disposition of the attempt- ed monopoly claim consisted of one para- graph in a 218-page opinion. Second, in *Zenith* the plaintiffs did not claim "that any defendant unlawfully attempted to estab- lish an agreement to control price as is alleged here" (Government's Brief p. 27). The district court, although succinct on the point, was crystal clear in *Zenith* in holding that the attempted joint monopolization claim required a conspiracy. Further, the fact that the attempted monopolization claim in *Zenith* did not directly allege an agreement as to price makes absolutely no difference to the application of the ele- ments under Section 2 of the Sherman Act.

---

**3.** No sentence was imposed on the charge of attempt to monopolize because it was deter- mined to have merged in the actual monopoly count. *American Tobacco,* 328 U.S. at 783, 66 S.Ct. at 1126.

Despite the perspicuous language of *American Tobacco* and *Zenith,* the Government asserts, without citing any authority, that no agreement or conspiracy is necessary in maintaining an action for attempted joint monopolization. The basis of this assertion is that courts have consistently held that there are only two requirements in an attempted monopolization case: specific intent to accomplish the illegal result, and a dangerous probability that the attempt will be successful. *See, e.g., Dimmitt Agri Industries, Inc. v. CPC International, Inc.,* 679 F.2d 516, 525 (5th Cir.1982); *Spectrofuge Corp. v. Beckman Instruments, Inc.,* 575 F.2d 256, 276 (5th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).

The problem with this argument is that every case cited by the Government on this point involves an allegation of monopolization or attempted monopolization against a single firm. In an attempted monopolization action against a single firm, no agreement or conspiracy is required to create the danger of monopolization that Section 2 addresses, because the nature of the allegation is that the single firm possesses that market power. Consequently, there would be no reason for these decisions to address the requirements involved in a joint monopolization case and they do not do so.

The joint monopolization theory holds that monopoly power is possessed or attempted to be possessed by more than one firm. *American Tobacco, supra.* Such a situation is analytically different from a single firm case. While a single firm attempt to monopolize case may only have two requirements, a joint monopolization case has a third requirement-agreement. In order to explain the reason that an agreement or a conspiracy must be established, it is necessary to look to the general principles of Section 2 and discover the evils it was designed to redress.

 Section 2 of the Sherman Act is primarily concerned with monopoly power.

Monopoly power is the economic ability to control prices and exclude competition. *Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *see also* L. Sullivan, Antitrust 35 (1977). The Government argues here that Section 2 can be expanded to proscribe attempted joint monopolization without any agreement between the parties who together allegedly possessed monopoly power. This Court does not agree. Prior to an agreement neither party possesses sufficient market strength to engage in conduct prohibited by Section 2.[4] It is the agreement, and the consequent threat of the attainment of monopoly power, that creates a Section 2 cause of action. Without an agreement or conspiracy the Government's case must fail.

 Crandall's proposition to Putnam was a unilateral invitation to affect a change in prices. Although Crandall's conduct was at best unprofessional and his choice of words distasteful, the remedy does not lie in the antitrust laws. The result would be different, of course, if Section 1 punished attempts. This Court sees no sound legal or economic reason to expand the theory of attempted joint monopolization to include a unilateral solicitation to increase prices. Without an allegation of an agreement between Crandall and Putnam, or an allegation that American alone possessed sufficient market power to attempt to monopolize on its own, the complaint does not state a cause of action maintainable under Section 2 of the Sherman Act.

### B. Too Short of a Runway

The defendants' second ground for dismissal is that Crandall's conduct constituted only a solicitation to raise prices, and that under the common law a solicitation can not be prosecuted as an attempt. The defendants also assert that since the distinctions between solicitation and attempt were rec-

---

**4.** The Government does not assert that American alone possessed the market power to monopolize on its own; the only allegation is for attempted joint monopolization between American and Braniff.

ognized at common law, Congress did not intend to prosecute solicitations as attempts when it enacted Sherman Act Section 2.

The Government argues that solicitations and attempts are not mutually exclusive, and in certain situations a solicitation can be prosecuted as an attempt. Consequently, the Government concludes Crandall's conduct constituted both a solicitation to monopolize as well as an attempt to monopolize, actionable under the Act.

The legislative history of the Sherman Act provides little guidance in interpreting the Act, except it does clearly illustrate that the Act was intended to be an embodiment of common law principles. The Supreme Court has recently reiterated this fact. In *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* —— U.S. ——, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Court wrote:

> The repeated references to the common law in the debates that preceded the enactment of the Sherman Act make it clear that Congress intended the Act to be construed in the light of its common-law background.

*Id.* —— U.S. at ——, 103 S.Ct. at 905, 74 L.Ed.2d at 733. Just as the Court drew upon the common law to determine the breadth of Section 1 in *Chicago Board of Trade v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918), and the scope of the private remedy under Section 7 in *Associated General Contractors, supra,* this Court must look to the common law to ascertain the meaning of "attempt" as used in Section 2 of the Sherman Act.

■ At common law attempt is the inchoate offense closest to the substantive wrong. Its elements are: (1) the specific intent to commit the wrong, (2) some overt action toward completion of the wrong amounting to more than mere preparation, and (3) the failure to consummate its commission. *Hutchinson v. State,* 315 So.2d 546, 548 (Fla.Dist.Ct.App.1975). The most difficult aspect of the law of attempt has been the second element. Cases and commentators have been unable to clearly articulate what acts or conduct generally are

sufficient to constitute an attempt. *See* W. Burdick, *Law of Crime* § 141 (1946) (and cases cited therein).

■ A solicitation is an inchoate offense involving "any use of words or other device by which a person is requested, urged, advised, counseled, tempted, commanded or otherwise enticed or incited to commit a crime." R. Perkins, Criminal Law 582 (2nd ed. 1969). The crime is the act of incitement or invitation. *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963). At common law it was not clearly determined that solicitation was a crime until the decision in *The King v. Higgins,* 2 East. 5, 102 Eng. Rep. 269 (1801). The multiple opinions in *Higgins* have been accused of obfuscating the law of attempt in the area of verbal solicitations. *See State v. Bowles,* 70 Kan. 821, 79 P. 726, 729–30 (1909).

The defendants assert that under the common law a solicitation could not be punished as an attempt. The clear majority of the early cases support this assertion. *See e.g., State v. Bowles,* 70 Kan. 821, 79 P. 726 (1909); *State v. Davis,* 319 Mo. 1222, 6 S.W.2d 609 (1928); *State v. Butler,* 8 Wash. 194, 35 P. 1093 (1894); *State v. Baller,* 26 W.Va. 90 (1885). The only clear authority to the contrary is *People v. Bush,* 4 Hill. (N.Y.) 133 (1843).

A thoughtful analysis is provided in *State v. Bowles, supra,* where the defendant, a member of the board of education, was charged with offering his vote on a certain matter in exchange for a bribe. Indicted for attempted bribery under the state's general attempt statute, the defendant had the charge dismissed. The Kansas Supreme Court affirmed the dismissal:

> [t]he very definition of 'attempt' precludes the possibility of its including a mere solicitation .... Some of the courts have treated solicitation to commit a crime as an attempt. By the weight of authority, however, it is not a sufficient overt act to be indicted as an attempt, but must be indicted as a distinct offense.

*Id.* 70 Kan. at 730, 79 P. 726 citing 25 L.R.A. 434 and 12 Cyc. 183. The Kansas court

concluded, "[i]n harmony with what is undoubtedly the modern trend of the law, this court is constrained to hold that so long as the will of the person solicited is opposed to the corrupt conduct there can be no attempt, in the legal sense, to accept or receive a bribe." *Id.* at 731, 79 P. 726.

Previously the Washington Supreme Court had announced a similar holding in *State v. Butler,* 8 Wash. 194, 35 P. 1093 (1894). In that case the defendant was charged with attempt to commit adultery on the basis of solicitation he made to a married woman. The court examined the authority available on this question and concluded that, although a solicitation could be itself a substantive offense, it could not be the basis of additional liability for an attempt.

The important treatise writers favor the position that a solicitation is not sufficient to support a charge of attempt. 1 W. Burdick, *The Law of Crime* § 106 (1946); W. Clark and Marshall, *A Treatise on the Law of Crime* § 125 (2d ed. 1912); 1 F. Wharton, *A Treatise on Criminal Law* § 179 (9th ed. 1885). The opposite position was taken in 1 Bishop, *New Criminal Law* § 767 *et seq.* (8th ed. 1892). Bishop's case authority, however, was later criticized sharply by Professor Curran in *Solicitation: A Substantive Crime,* 17 Minn.L.Rev. 499, 503 (1933).[5]

The later cases are nearly unanimous in their refusal to charge a solicitation as an attempt. *See e.g. People v. La Fontaine,* 79 Cal.App.3d 176, 144 Cal.Rptr. 729 (1978); *Hutchinson v. State,* 315 So.2d 546 (Fla. Dist.Ct.App.1975); *State v. Otto,* 102 Idaho 250, 629 P.2d 646 (1981); *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963). These cases have articulated two rationales for the position that a mere solicitation cannot be an attempt: (1) a verbal solicitation is not the sort of physical, overt action required as an element of common law attempt; and (2) the independent moral judgment of a presumably innocent second par-

ty always stands between the solicitation and the commission of the crime.

Typical of the cases holding that the requisite overt act is not satisfied by a solicitation is *Hutchinson v. State,* 315 So.2d 546 (Fla.Dist.Ct.App.1975). In *Hutchinson* the defendant unsuccessfully solicited another person to arrange for the murder of a third party. Convicted of attempted murder under the general attempt statute, the defendant appealed and obtained a reversal. The court held:

> The gist of criminal solicitation is enticement, whereas an attempt requires an intent to commit a specified crime, an overt act and failure to consummate that crime. This being true, to call solicitation an attempt is to delete the element of an overt act.

*Id.* at 548.

The second rationale is illustrated by the Tennessee Supreme Court in *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963), where that court reversed a conviction for attempted murder based on a solicitation. The court noted that after a mere solicitation, "there are too many contingencies, such as the willingness of the solicitant to carry out the design, to say the dye is cast. But to hold solicitation an attempt this would be necessary." *Id.* 371 S.W.2d at 451.

The single modern case holding that a solicitation can also be an attempt is *United States v. May,* 625 F.2d 186 (8th Cir.1980). In that case Joseph May was convicted on a number of counts, including one based on 18 U.S.C. § 2071, which prohibits concealing or destroying government documents and attempts to do the same. May, under investigation for misuse of federal property, telephoned retired General Miller and requested the Miller contact General Gilbert to request that certain incriminating documents be made unavailable to investigators. Miller called Gilbert, who refused to comply. In considering May's defense that this was not an attempt, the court held:

> May also argues that his . . . conviction must fail because his conduct constituted

---

**5.** Professor Curran concluded that only one of the seven cases cited by Bishop stands for the proposition that a solicitation can be charged as an attempt. 17 Minn.L.Rev. 499, 502 (1933).

only a solicitation, not an attempt to commit a crime. Specifically, he contends that the evidence showed only preparation and that no overt act constituting a substantial step in the attempt was shown. We disagree. When May called General Miller, he engaged in a course of conduct designed to culminate in the unlawful concealment of government records. See *U.S. v. Robles,* 185 F.Supp. 82, 85 (N.D.Cal.1960).

*Id.* at 199.

This language in *May* is troublesome. The case includes no discussion of the common law cases and the single case cited as authority does not support the holding.[6] The *May* decision contradicts the clear majority of cases. Even if that is the law in the Eighth Circuit, and this Court is not convinced that it is, there is no similar decision in the Fifth Circuit.

The Government does not endeavor to distinguish the cases holding that a verbal solicitation does not constitute an attempt. In fact the Government admits that most solicitations will not be attempts. Instead, the Government argues that in certain situations a solicitation can have the legal characteristics and consequences of an attempt. More specifically, it is argued, when a solicitation constitutes a substantial step toward the commission of the substantive crime, it is both a solicitation and an attempt. According to the Government, Crandall's conduct constituted both an attempt to monopolize as well as a solicitation to monopolize.

The Government's argument is similar to the one made by the prosecution in *People v. La Fontaine,* 79 Cal.App.3d 176, 180, 144

Cal.Rptr. 729 (1978). The defendant in that case was charged with attempted lewd or lascivious act upon a child based upon a verbal solicitation. The prosecution argued that in certain situations a solicitation should be considered as constituting an attempt. The prosecution's authority was a law review article, Perkins, *Criminal Attempt and Related Problems,* 2 U.C.L.A.L. Rev. 319, 351–53 (1955). The court expressly rejected the prosecution's argument as well as Perkins' theory. The court held:

We see no logic or reason to carve out of the general principles, accepted by the California decisional law, an exception that *certain acts* of solicitation, which otherwise constitute preparation only, should be considered as going beyond preparation to constitute the offense of an attempt, because of the type of crime being solicited. (emphasis in original).

79 Cal.App.3d at 182–83, 144 Cal.Rptr. at 733.

In this case the Government resurrects the Perkins article and urges that his theory of expanded attempt liability be accepted. This Court agrees with the California Court of Appeals that such a position is unwarranted. The general rule that a solicitation cannot be an attempt is too well established. This Court will not recognize unsound distinctions that could unreasonably expand attempt liability well beyond the common law parameters.

The Government cites several bribery and subornation of perjury cases, contending they establish that in certain situations a solicitation can be prosecuted as an attempt. They do not. The bribery cases, *Lopez v. United States,* 373 U.S. 427, 428, 83

---

**6.** In *United States v. Robles,* 185 F.Supp. 82, 85 (N.D.Cal.1960), the defendant was charged with violation of 18 U.S.C. § 1403, which makes it a crime to use the mails in facilitating the commission of, or in attempting to commit, a violation of 21 U.S.C. § 174, a narcotics statute. The prosecution presented as evidence a letter sent by defendant addressed to a man known to be a narcotics dealer. The defendant argued that the sending of the letter could not constitute an attempt. The court noted, in language that the May decision later picked up, "[w]hen defendant wrote the letter, and mailed it, he began a course of conduct designed to culminate in the unlawful importation of a narcotic drug into the United States." The conviction, however, was not for an attempt to import illegal substances, but rather for use of the mails in an attempt to import narcotics. In this regard the court noted "[t]he language of Title 18 U.S.C. § 1403 is such as to compel a conclusion that an attempt may be made by the mere use of the mails." Because the offense was use of the mails in conjunction with an attempt, *Robles* does not stand for the proposition that a solicitation can amount to an attempt to commit the substantive crime.

S.Ct. 1381, 1382, 10 L.Ed.2d 462 (1963); *United States v. Deutsch,* 475 F.2d 55, 56 (5th Cir.1973); *United States v. Kemmel,* 188 F.Supp. 736, 740 (M.D.Pa.1960), *aff'd,* 295 F.2d 712 (3rd Cir.1961), *cert. denied,* 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 525 (1962); *Kemler v. United States,* 133 F.2d 235, 238 (1st Cir.1943), were all brought under 18 U.S.C. § 201, or its predecessor, 18 U.S.C. § 591. Section 201 reads in pertinent part, "[w]hoever, directly or indirectly, corruptly gives, offers or promises anything of value ..." The statute clearly makes the offer of the bribe a substantive crime. The cases are not examples of convictions for an attempted substantive crime, and consequently do not help the Government's case. The subornation of perjury cases, *State v. Johnson,* 26 Del. 472, 84 A. 1040 (1912) and *Dodys v. State,* 73 Ga.App. 483, 37 S.E.2d 173 (1946), are narrow and equally unpersuasive.

■ The overwhelming authority establishes that at common law a solicitation was not punished as an attempt. The distinctions between a solicitation and an attempt are meaningful. As inchoate crimes both offenses reach conduct that a substantive criminal statute cannot reach. Before preparatory conduct may be punished as an attempt, it is critical that the elements of an attempt be satisfied. Without the requisite intent, overt act and dangerously close failure, the conduct that becomes punishable as an attempt becomes quite speculative. As so many other courts have acknowledged, this Court does not believe that a solicitation satisfies the overt act requirement necessary to establish an attempt.

■ Further, this Court concludes that when Congress enacted the Sherman Act there was no intention to punish solicitations as attempts. Congress thought the Sherman Act was an expression of common law principles. Among those principles was the common law distinction between attempt and solicitation.

## IV. Grounded

In this action the Government endeavored to establish an attempted joint monopolization charge against Crandall and American without alleging any agreement or conspiracy. This Court concludes that such a cause of action can not be maintained under Section 2 of the Sherman Act without some agreement. This Court also concludes that the clear common law rule is that a solicitation may be punished as a solicitation, but not as an attempt. Section 2 of the Sherman Act, read with its common law principles, cannot be expanded to include solicitations. For both of these reasons this Court concludes that the defendants' motion to dismiss for failure to state a claim must be granted and this action should be dismissed.

It is so ORDERED.