**UNITED STATES of America**

v.

**William BUTLER, Defendant.**

United States District Court
S. D. New York.
April 16, 1962.

**340**

---

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, for the United States; Jonathan L. Rosner, Asst. U. S. Atty., of counsel.

Anthony F. Marra, Legal Aid Society, for defendant; Leon B. Polsky, New York City, of counsel.

PALMIERI, District Judge.

This is a prosecution under section 1403 of Title 18, enacted by Congress in 1956.

The one count indictment charged defendant with "unlawfully, wilfully and knowingly [using] a communication facility, to wit, a telephone, in attempting to commit an act constituting an offense, the penalty for which is provided in Title 21, United States Code, section 174." The case was tried to the Court upon defendant's waiver of a jury. Rule 23 (a), Fed.R.Crim.P. 18 U.S.C.

Section 1403 makes it unlawful to use "any communication facility in committing or in causing or facilitating the commission of, or in attempting to commit, any act or acts constituting an offense or a conspiracy to commit an offense the penalty for which is provided. in" various sections of the United States Code dealing with narcotics, including section 174 of Title 21.[1] Each separate use of a communication facility is made a separate offense and the term communication facility is defined to include "any and all public and private instrumentalities used or useful in the transmission of writings, signs, signals, pictures, and sounds of all kinds by mail, telephone, wire, radio, or other means of communication."

Section 174 prescribes a penalty for anyone who receives, conceals, buys, or sells a narcotic drug "knowing the same to have been imported or brought into the United States contrary to law."

The issue in this case is whether knowledge of illegal importation, an essential element of the crime in a prosecution under section 174, is an element of the crime in a prosecution under section 1403 where the underlying crime is an attempt to violate section 174, and if so, whether the Government established the requisite knowledge.

The only evidence introduced in this case was the testimony of an agent of the Federal Bureau of Narcotics. He testified to three telephone conversations, two of which he believed to have been with defendant and one of which he believed to have been with defendant's brother, and to a meeting later the same day with defendant at which defendant was placed under arrest as soon as he identified himself by the name used during the telephone conversations.

The agent testified that while he was in a certain apartment, engaged in his official duties, the telephone rang. The apparently absent tenant of the apartment was not identified. The agent answered the telephone and the following conversation ensued:

"Voice: Hello. Sarge?

"Agent: Yes.

---

1. The other sections referred to in section 1403 are 21 U.S.C. § 184a and subsections (a) or (b) of section 7237 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 7237(a, b).

"Voice: This is Willie. You know, Ray's brother. What happened? You were supposed to meet me and give me that half ounce. I waited at the spot you told me over an hour and you did not show. You are really hanging me up.

"Agent: Gee, I forgot all about it. I was busy taking care of something.

"Voice: Well, can I get the half ounce of stuff? To tell you the truth, while I was waiting, I spent some of the money and I'll be a little short.

"Agent: That's okay. Call me back in half an hour and we'll make some arrangements."

About twenty minutes later the phone rang again, the agent answered it, heard what he believes to have been a different voice, and the following conversation ensued:

"Voice: Hello. Sarge?

"Agent: Yeah.

"Voice: This is Ray from Philadelphia. My brother Willie just called and said that you are lousing him up. What happened?

"Agent: Nothing happened. I told him I would take care of him.

"Voice: Well, listen, he's $15 short but I'll guarantee it. I'll give it to you tomorrow or the next day when I come in to pick up.

"Agent: That's okay. I'll take care of him.

"Voice: You don't sound like Sarge. Who is this anyway? Never mind. I'm not guaranteeing anything."

The person at the other end then disconnected.

About ten minutes later, at approximately eight o'clock, the phone rang a third time, the agent answered it and heard what he believed to have been the voice of the first caller, and the following conversation ensued:

"Voice: Hello. Sarge?

"Agent: Yeah.

"Voice: This is Willie again. Did my brother Ray call you?

"Agent: Yes, he just called me.

"Voice: Well, did he explain about the $15?

"Agent: Yeah, everything will be okay."

At this point the agent inquired about Ray's telephone number, was told a number, and the conversation continued:

"Voice: Well, am I going to get the half ounce of stuff?

"Agent: Yeah, I'll take care of you.

"Voice: When can I get it?

"Agent: Where are you now?

"Voice: I am at 133rd Street and Lenox Avenue.

"Agent: Well, it is eight o'clock now. Take a taxicab to 157th Street and Broadway. There is a candy store on the corner. I'll meet you in front of the candy store at 8:30. What do you look like?

"Voice: Well, I look just like my brother. I am wearing a brown coat and a brown hat and I am pretty tall.

"Agent: How old are you?

"Voice: I'm in my 40s.

"Agent: Okay. I will meet you at 8:30."

The agent testified that he arrived at the designated corner at twenty past eight. At twenty-five past eight "a taxicab pulled up and the defendant, William Butler, got out of it. He was wearing a brown hat and brown coat. He stood on the sidewalk in front of the closed candy store, looking up and down the street. I waited about five minutes, until about 8:30. He was still standing there." The agent, together with another agent, approached the defendant and asked him whether he was "Willie from Philadelphia." When he replied in the affirmative, the agent identified himself and placed defendant under arrest.[2]

2. Transcript of Record pp. 8–21.

With that evidence the Government rested. Defendant also rested and moved for an acquittal.

■ Only two cases appear to have been reported involving prosecutions under section 1403. In United States v. Contrades, 196 F.Supp. 803 (D.Hawaii 1961), the Court held that knowledge of illegal importation is an essential element of the offense. In United States v. Robles, 185 F.Supp. 82 (N.D.Cal.1960), the question whether knowledge of illegal importation is an essential element of the crime did not arise because defendant was charged with using a communication facility in attempting to import narcotics. From the facts stipulated the Court found that defendant wrote a letter from California to one Ibarra, in Mexico, inquiring whether Ibarra had narcotics, and the price per gram at which he would sell them. The letter was found on Ibarra when he was arrested in Mexico in a laboratory manufacturing heroin. The question that confronted the Court in Robles was whether the mere mailing of a letter, the first step in a course of conduct designed to culminate in the unlawful importation of a narcotic drug, was sufficient to constitute an attempt as opposed to preparation. The Court held that under section 1403 an attempt could be made by the mere use of a communication facility.

Looking to the words of the statute, it is clear that section 1403 incorporates by reference the requirement of knowledge. Section 1403 prohibits the use of a communication facility in an attempt to commit "an offense the penalty for which is provided" by section 174. One must, therefore, look to section 174 to determine whether the communication facility was used in an attempt to commit an offense penalized by section 174. Section 174 prescribes a penalty solely for

one who purchases narcotics "knowing the same to have been imported * * * contrary to law."

The Government's contention that Congress intended to substitute use of a communication facility for unlawful importation as a basis of federal jurisdiction in prosecutions under section 1403 is without support in the statute or the legislative history. The section, as enacted, is entitled "Use of Communication facilities—penalties". The House Report contains a single explanatory sentence of the section. It is headed "Penalties for use of communication facilities" and states, "Penalties would be provided for persons using any communication facility in committing a violation of the Federal statutes applicable to narcotic drugs and marihuana." 1956 U.S.Code Cong. & Adm.News, pp. 3274, 3276. The section was not debated in the House. In the Senate the section was inserted in lieu of a wiretapping provision originally contained in the bill. Those sponsoring the bill strongly urged adoption of a provision authorizing, subject to court order, wiretapping and use of evidence obtained as a result of wiretapping in narcotics prosecutions, on the ground that such a provision was necessary for the apprehension and conviction of the large narcotics traffickers who conducted all transactions by means of the telephone. 102 Cong.Rec. 9015–16, 9042–43 (1956). The provision was vehemently opposed on the floor of the Senate as an intrusion on the basic liberties guaranteed by the Constitution and a provision similar to section 1403 was adopted as a compromise. Id. at 9402–04. The wiretapping provision, contained in the original bill, was not designed to provide an additional basis for federal jurisdiction and there is nothing to indicate that the Senate intended the provision it substituted to do so.[3]

---

3. It is not at all clear that the section is limited to means of communication that are subject to federal jurisdiction. Section 1403(b) provides:

"For the purposes of this section, the term 'communication facility' means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, and sounds of all kinds by mail, telephone, wire, radio or other means of communication."

A note from one person to another residing in the same city and delivered by

Moreover, if section 1403 were construed as not incorporating the definition of the offense as given in the underlying section, it would be open to the challenge that it is void for vagueness. For if the section defining the underlying offense is not incorporated into section 1403, section 1403 fails to define the offense in connection with which use of a communication facility is made a crime. Indeed, it fails to define any offense whatsoever.

 It is well established that a criminal statute must be definite as to the acts which it prohibits. See United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L. Ed. 200 (1952); United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); 1 Wharton's Criminal Law and Procedure, pp. 32–40 (Anderson ed. 1957). Section 1403 penalizes the use of communication facilities in connection with certain offenses but does not define these offenses other than by reference to designated sections of the Code. Therefore, unless the reference to the sections designated is held to incorporate into section 1403 the definitions of the offenses contained in the designated sections, section 1403 prohibits the use of communication facilities in connection with certain conduct, without defining that conduct. So construed it would not provide an "adequate warning as to what conduct falls under its ban," [4] United States v. Petrillo, supra, 332 U.S. p. 7, 67 S.Ct. p. 1542, and thus would not satisfy the constitutional requirement that the conduct prohibited be clearly defined.

Nor do I agree with the Government that a construction of the statute which incorporates the elements of the underlying offense into section 1403 would require the Government to establish in every instance the same thing it would have to establish for a conviction under section 174 and thus render the section useless. The Robles case, supra, illustrates a situation in which there clearly was no importation contrary to section 174 but in which there was use of a communication facility in an attempt to do so. Similarly, the question in the instant case might have been different if the Government had established that the person whose telephone number the defendant had called was engaged in the sale of narcotics unlawfully imported into the United States, and that the defendant was aware of this. Finally, section 1403 makes each use of a communication facility a separate crime punishable by a severe penalty.

 Counsel for the Government further urges, however, that even if section 1403 incorporates all the elements of the underlying crime as defined in section 174, knowledge of illegal importation is not necessary for a conviction of an attempt to violate section 174 because an attempt never encompasses all the elements of the consummated crime. This contention requires consideration of two distinct problems: One, usually presented in prosecutions for attempt, is whether the conduct of the defendant went sufficiently far towards the commission of the crime to constitute an attempt or whether it merely constituted preparation, that is, the traditional preparation—attempt distinction with which the Court was concerned in Robles, supra. See United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); Wechsler, Jones, and Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicita-

---

private messenger would certainly be within the definition but would not be subject to federal regulation. Congress has had considerable experience in enacting statutes based on use of interstate instrumentalities, see e. g., 18 U.S.C. §§ 1343, 1952, 1953, and no reason appears why Congress would have formulated the broadest possible definition of "communication facilities" in section 1403 if it intended the section to apply only to interstate facilities.

4. For a discussion of constitutional and other possible rationales underlying the void-for-vagueness doctrine see The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960); Due Process Requirements of Definitness in Statutes, 62 Harv.L.Rev. 77 (1948).

tion, and Conspiracy, 61 Colum.L.Rev. 571, 592–607 (1961) (hereinafter Model Penal Code). In the Coplon case, supra, Judge Learned Hand rejected the test under which a person "intending to commit a crime which he fails to carry out" would be guilty of an attempt only if he had done "all that it [was] within his power to do, but [had] been prevented [from consummating the crime] by intervention from outside," and quoted with approval Justice Holmes' statement in Commonwealth v. Peaslee, 177 Mass. 267, 272, 59 N.E. 55 (1901) as follows: "Preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor, although there is still a locus poenitentiae, in the need of a further exertion of the will to complete the crime." United States v. Coplon, supra, 185 F.2d p. 633. As defined by the Model Penal Code, the crime is essentially "one of criminal purpose implemented by an overt act strongly corroborative of such purpose." Wechsler, supra, p. 573. Thus, the question involved in distinguishing preparation from attempt is whether the actor's conduct is sufficiently unequivocal to be corroborative of the actor's purpose. Were that the question before me, I would have little difficulty in holding that the defendant attempted to purchase narcotic drugs. He telephoned twice to discuss the purchase, he arranged for delivery to occur at a designated place and time, he arrived at that place at that time, and he identified himself to the agent by the name used in the telephone conversations.

The more difficult question, however, is whether that which defendant attempted was a crime; that is, granting that he attempted to purchase narcotic drugs, did he attempt to purchase illegally imported narcotic drugs? For, while it is true that an attempt never encompasses all the elements of a consummated crime, there must be an attempt to commit a crime.

In holding that the Government must prove that defendant attempted to purchase illegally imported narcotic drugs, I am not holding that legal impossibility is a defense to an attempt charge. As the comments to the Model Penal Code provision on attempt point out, since one of the functions of penalizing attempts is to make amenable to the corrective processes of the law persons who manifest a certain dangerousness, impossibility should not be a defense—unless the means chosen are so inappropriate as to negate dangerousness. Thus, the commentators disapprove of People v. Jaffe, 185 N.Y. 497, 78 N.E. 169, 9 L.R.A.,N.S., 263 (1906), in which the New York Court of Appeals held that a person who accepted goods that he believed to be stolen, but were not then, in fact, stolen goods,[5] could not be guilty of an attempt to receive stolen goods. Nevertheless, the Model Penal Code definition of attempt, which is designed to eliminate impossibility as a defense, requires that the person act "with the kind of culpability otherwise required for commission of the crime"[6] and the comments emphasize that "it is still necessary that the result desired or intended by the actor constitute a crime."[7]

While one's conduct may constitute an attempt even though the objective fact is contrary to what he believed it to be, it can only constitute an attempt if the objective fact as he believed it to be would have constituted a crime. The criminal purpose requisite for an attempt is identical with the criminal purpose requisite for the crime, even though truth of the objective fact is essential only for the latter. Thus, to establish the crime defined by section 174, the Government must show illegal importation and knowledge of illegal importation.

---

5. Apparently the goods in question had been intercepted by a Government agent and were offered to defendant for the purpose of making the arrest.

6. See the Model Penal Code definition of Attempt, Wechsler, supra, p. 573.

7. Id. p. 579.

To establish an attempt the Government need prove neither illegal importation nor knowledge of illegal importation, but it must show that defendant believed the narcotic drugs were illegally imported, that is, that he acted with the purpose of purchasing illegally imported narcotic drugs.[8] Here the Government has submitted no evidence to establish that it was defendant's purpose or that he believed he was about to purchase illegally imported narcotic drugs. Indeed, there was no evidence that the word "stuff" refers to a narcotic drug that is imported rather than to a narcotic drug that can be domestically cultivated.

■■ Finally, the Government contends that if knowledge of illegal importation is required, the evidence submitted was sufficient to give rise to such an inference.

Assuming the statutory inference applicable to prosecutions under section 174 applies to prosecutions under section 1403,[9] it would not alter the decision in this case because the presumption can only be invoked if the defendant had actual possession or constructive possession evidenced by some measure of control over the narcotics. United States v. Santore, 290 F.2d 51 (2 Cir. 1960). There was no such possession here.

The Santore case involved a five count indictment, one count charging a number of persons with a conspiracy to conceal, possess, buy and sell a quantity of narcotic drugs, and the other counts charging certain of these persons with possessing or selling the drugs on specified dates. The Court of Appeals reversed the convictions of a number of the defendants on certain counts on the ground that the evidence did not show actual possession of the narcotics or sufficient control to permit application of the statutory inference in those instances. On rehearing the case *en banc*, the Court differed with the conclusions of the original panel only with respect to the reversal of the convictions of Lo Piccolo and Santore on Count II of the indictment. It said: "The proof points clearly * * to Lo Piccolo's supervision over the entire errand, even to the extent of his accompanying Orlando to the hotel and waiting outside in his car (which was used for the trip) while Orlando deposited the goods in the room." Although Santore "acted in no such supervisory capacity" he nonetheless "actively assist[ed] the parties making the sale."[10] While a number of judges dissented from the application of the presumption to these facts and the views of the Court remain to be clarified, compare the majority and dissenting opinions in United States v. Hernandez, 290 F.2d 86 (2 Cir. 1961), even under the criteria applied in Santore, the statutory inference provided in section 174 would not apply to the defendant in the instant case.

Nor can I accept the Government's contention that the defendant's attempt to purchase narcotics coupled with the provisions of 18 U.S.C. § 1402 and 21

---

**8.** Truth of the objective fact—illegal importation of the narcotic drugs defendant attempted to purchase—is, however, essential to federal jurisdiction in this case in view of my conclusion that section 1403 is not based on federal jurisdiction over interstate communication facilities. See note 3, supra.

**9.** Proving the required element of knowledge in prosecutions under section 1403 by way of the statutory inference provided in section 174, presents an interesting question. Section 174 provides:

"Whenever on trial for violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession * * *."

Thus, by its terms, the statutory inference is only applicable to prosecutions under section 174. It might, however, be argued that in cases where the elements of the offense under section 1403 are derived from section 174, the means provided for proving those elements should also be incorporated into section 1403. However, this question need not be decided here in view of my conclusion that the presumption would not apply to the facts of this case in any event.

**10.** United States v. Santore, supra, 290 F.2d p. 76.

U.S.C.A. § 173 establish knowledge of illegal importation. The argument is that since section 1402 required the surrender of all heroin lawfully possessed prior to the date of the Act and section 173 makes it unlawful to import narcotic drugs, defendant could not have purchased heroin that was lawfully possessed. What the Government is asking is that the Court substitute for the inference flowing from possession provided by statute, a presumption that everyone knows importation of narcotic drugs to be illegal. Such a presumption might well be constitutional. In Santore, Chief Judge Lumbard, writing for the Court *en banc*, stated:

> "The rational basis for the presumption in § 174, which constitutionally justifies shifting the burden of proof to the defendant-possessor, is that it is common knowledge that virtually all narcotic drugs must be imported into the United States. Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L. Ed. 904. This premise is as rationally applicable to those principals who have not touched the contraband but know of its possession as to those who may have had it in their physical custody." (290 F.2d p. 77).

Indeed, it would seem that possession is entirely irrelevant to the applicability of this premise and that it could be rationally applied to all narcotic transactions without regard to possession. It appears, however, that a presumption that would eliminate the need for independent evidence of knowledge without regard to possession is not permissible under existing law. Otherwise the long discussion in Santore, the reconsideration *en banc*, the separate opinions filed by a number of judges, and the difference between the majority and dissent in Hernandez, in sum a total of eight opinions expressing differing views on the degree of involvement necessary for the statutory inference to apply, would all have been pointless. Moreover, in the instant case there is no basis for the application of a presumption flowing from the premise that virtually all narcotic drugs are imported illegally because, as already stated, there is no evidence that "stuff" refers to heroin as opposed to other narcotic drugs which can be domestically manufactured or cultivated. Indeed, it may well refer to marihuana which can be cultivated in the United States and requires no importation.

### Conclusion

There was no evidence that the narcotic drugs which were the subject matter of defendant's telephone conversations with the narcotic agent were illegally imported, proof of which is essential for federal jurisdiction over the crime, or that defendant believed that the narcotic drugs were illegally imported, which is an essential element of culpability under section 1403 where the underlying crime is defined by section 174. There was, consequently, a failure of the proof required by § 1403. Defendant's motion for acquittal must therefore be granted.

I have come to this conclusion with considerable regret and only because of the unfortunate way in which section 1403 is drafted. A statute could be drafted that would reinforce Government efforts to suppress the narcotics traffic by penalizing persons such as this defendant. Such a statute might properly provide that the use of interstate communication facilities in an attempt to engage in an illicit narcotics transaction is a federal crime and place upon the defendant the burden of coming forward with evidence to show that he believed the transaction to be legitimate.[11] Use of interstate instrumentalities has often pro-

---

11. The Government would, of course, have the burden of proving the defendant's belief in the illicit nature of the transaction, beyond a reasonable doubt; but a presumption that a narcotics transaction which contemplated transfer of narcotics through other than the regular channels is unlawful, would permit the Government to satisfy this burden without adducing independent evidence in cases where the defendant offers no evidence to the contrary.

vided a basis for federal jurisdiction and, in view of the many state and federal laws prohibiting the cultivation, manufacture and importation of narcotic drugs for other than medical purposes, such a presumption would be rational and enforceable. Unfortunately, section 1403 is so closely tied to section 174, that it is deprived of legal significance except within the framework and limitations prescribed by this underlying statute.

The defendant is acquitted of the charge. It is so ordered.